**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **GLENN RAY ALLEN,** | § | |
| **Petitioner** | § | |
| | § | |
| **v.** | § | **A-11-CV-789-SS** |
| | § | |
| **RICK THALER, Director,** | § | |
| **Texas Department of** | § | |
| **Criminal Justice–Correctional** | § | |
| **Institutions Division,** | § | |
| **Respondent.** | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

TO:     THE HONORABLE SAM SPARKS
        UNITED STATES DISTRICT JUDGE

The Magistrate Judge submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(e) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrates, as amended, effective December 1, 2002.

Before the Court are Petitioner Glenn Ray Allen's Petition for Writ of Habeas Corpus (Document 1) and Answer with Brief in Support of Respondent, Rick Thaler, Director of the Texas Department of Criminal Justice, Correctional Institutions Division (Document 6).  No reply was filed.  For the reasons set forth below, the undersigned concludes that the petition should be denied.

**STATEMENT OF THE CASE**

**I.     PROCEDURAL HISTORY**

The Director has custody of Allen pursuant to judgments and sentences of the 331st District Court of Travis County, Texas in Cause Number D-1-DC-06-302224 in a case styled *State of Texas*

*v. Glenn Ray Allen*.   *Ex parte Allen*, Application No. WR-76,054-01, at 36-41, 43-44.[1]  On November 13, 2006, Allen was indicted on twelve counts of aggravated sexual assault, to which he pleaded not guilty.  1 C.R. at 28-33; 10 R.R. at 5-11.[2]  The trial court later found the evidence insufficient to charge Allen on four of the counts, and withdrew counts three, four, eight, and ten. 12 R.R. at 120-22; 13 R.R. at 101-02.

Presented with eight counts of aggravated sexual assault, 13 R.R. at 102; 2 C.R. at 259-71, a jury found Allen not guilty on one count (count six) and guilty on the other seven counts on March 28, 2008, *id.* at 270-71.  On March 31, 2008, the jury assessed life imprisonment as the punishment for counts two, seven, nine, eleven and twelve, and seventy-five years imprisonment for counts one and five.  *Id.* at 282-83.

On May 30, 2008, Allen filed a motion for a new trial alleging that his trial counsel's representation was ineffective in three respects:  (1) his trial counsel induced him to sign a stipulation in which Allen admitted that the complainant did not consent to sexual acts based on his counsel's mistaken belief that the trial court would instruct the jury on a lesser-included offense of sexual assault, which carried a maximum sentence of only twenty years, of which Allen would be

---

[1] Citations to pleadings and documents in the state-court habeas record appear as *Ex parte Allen*, Application No. WR-76,054-01, followed by a page number. [#] C.R. at [#] indicates a reference to the Clerk's Record in the state trial court, and [#] R.R. at [#] indicates citation to a particular volume and page number of the Reporter's Record of the trial.

[2] The indictment alleged three sexual acts:  that Allen forced the complainant to perform oral sex on him, that he performed oral sex on her, and that he had intercourse with her.  1 C.R. at 28-33; *see also* 2 C.R. at 262-66.  Each act was alleged to have been forced upon the victim in four different ways:  (1) by threat of "death, serious bodily injury, kidnapping, or any combination thereof"; (2) through the use of a gun; (3) a knife; or (4) Allen's hand.  1 C.R. at 28-33; *see also* 2 C.R. at 262-66.

required to serve only seven years;[3] (2) trial counsel failed to object to a detective's testimony that Allen conspired to dispose of the pistol used in the offense; and (3) trial counsel was too ill during trial to be effective.  *Id.* at 338-41.   After a hearing held over the course of three days, which included testimony from Allen's trial counsel, another attorney who assisted with the defense, Allen's mother, a psychiatrist, and Allen himself, *see* 17 R.R. at 4-47; 18 R.R. at 4-25; 19 R.R. at 4-44, the trial court denied Allen's motion for a new trial on July 11, 2008, 20 R.R. at 3.

On appeal, Allen contended that his trial counsel was ineffective under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984), and *United States v. Cronic*, 466 U.S. 648, 104 S. Ct. 2039 (1984), in inducing Allen to sign the stipulation.  Appellant's Br. at 7-35*, Allen v. State*, No. 03-08-00315-CR (Tex. App.–Austin Feb. 11, 2009).  The Third Court of Appeals affirmed the judgments on counts two, seven and nine, concluding that trial counsel's performance was not constitutionally defective under either *Cronic* or *Strickland*.  *Allen v. State*, No. 03-08-00315-CR, 2009 WL 2341830, at *7-9 (Tex. App.–Austin July 29, 2009, pet. ref'd).  Addressing a separate ground raised by the State, the court of appeals also found double-jeopardy violations in regard to

---

[3]  At trial, one of Allen's two defenses was a theory of consent.  *See, e.g.,* 13 R.R. at 44, 58. Towards the close of testimony, on March 28, 2008, the State called a rebuttal witness, Misty Mugica, to offer testimony regarding an extraneous offense.  *Id.* at 6.  Outside the presence of the jury, Mugica testified that she was attacked about a week after the complainant in this case was assaulted. *Id.* at 7-27. Mugica's testimony, from the prosecution's point of view, showed an attack that was similar to the charged offense, and the prosecution offered Mugica's testimony under Texas Rule of Evidence 404(b) to show that the complainant did not consent to having sex with Allen.  *Id.* at 44-55.  The trial court agreed that Mugica's testimony tended to negate Allen's theory of consent and showed modus operandi.  *Id.* at 55-56.  One of Allen's attorneys, Brian Guerra, then asked the trial court if the trial court might change his ruling if Allen withdrew his defensive theory of consent. *Id.* at 58-59.  The court stated that "I think that does remove, you know, his intent as being an issue." *Id.* at 60.  Allen's other attorney, John Kuhn, subsequently offered the following stipulation in open court:  "I, Glenn Allen, the defendant herein, judicially admit and stipulate that Janet Smith did not consent to having sex with me as alleged in Counts 1, 2, 5, 7, 9, 11, and 12, signed by Glenn Ray Allen, Marianne Powers [District Attorney's Office], and John C. Kuhn, attorney."  *Id.* at 66.

counts one, five, eleven, and twelve and reversed those convictions.[4] *Id.* at *10. The Court of Criminal Appeals denied Allen's petition for discretionary review on February 10, 2010. *In re Allen*, No. PD-1449-09 (Tex. Crim. App. Feb. 10, 2010).

Allen subsequently filed three state applications for habeas corpus challenging the convictions that had been affirmed on three of the original counts. He contended that his convictions resulted from: (1) an involuntary stipulation on the element of consent in violation of the Due Process Clause; (2) ineffective assistance of counsel at the guilt stage through a failure to object to inadmissible testimony regarding a possible extraneous offense of concealing the pistol allegedly used in the charged crimes; (3) ineffective assistance at the guilt stage through a failure to request an adverse inference jury instruction based on the prosecution's handling of the evidence of the vehicle allegedly used in the charged crimes; and (4) ineffective assistance of counsel at the punishment stage by failure to argue mitigating evidence at closing and virtually conceding that Allen had committed an extraneous offense; (5) ineffective assistance at the punishment stage through a failure to object to testimony that Allen had invoked his right to counsel; and (6) ineffective assistance at the punishment stage through inept examination of the detective regarding Allen's supposed attempt to dispose of a pistol. *Ex parte Allen*, No. WR-76,054-01, at 79-112 (May 6, 2011) (count two); *id.* at 113-46 (count seven); *id.* at 147-79 (count nine). His applications were denied without written order. *Id.* at cover (Sept. 7, 2011).

Allen subsequently filed his federal habeas petition on September 9, 2011.

_____

[4] At sentencing, the trial court had raised the issue of whether Allen's convictions on counts one and two violated double jeopardy. 15 R.R. at 4-6; 16 R.R. at 6. Allen's trial counsel later suggested that counts one, two, five and seven violated double jeopardy. *Id.* at 7. In its brief on appeal, the State raised double jeopardy issues with the convictions. *See* State's Br. at 47-48, *Allen v. State of Tex.*, No. 03-08-00315-CR (Tex. App.–Austin May 11, 2009).

## II.   FACTUAL BACKGROUND

The court of appeals summarized the evidence presented at Allen's trial as follows:

Janet Smith,[1] together with her husband and a friend, spent the evening of September 2, 2006, moving into a new residence in South Austin.  After a few hours, they stopped working and relaxed, drinking tequila shots and listening to music.  Smith acknowledged that she became highly intoxicated.  In the course of the evening, Smith and her husband began to argue.  Some time after midnight, and despite her husband's efforts to stop her, Smith left her new residence, walked a half-block, and sat down on the curb.

> [1] "Janet Smith" is a pseudonym chosen by the complainant.  *See* TEX. CODE CRIM. PROC. ANN. art. 57.02 (West Supp. 2008).

Smith recalled noticing a vehicle drive past her, then stop and return to where she was sitting.  Her next memory was being inside this vehicle as it drove through South Austin.  She described the interior of the vehicle as "dark and trashy," with wires hanging out of the dashboard and a dog in the back seat.  The driver of the vehicle, a stranger to Smith, was also unkempt, with "straggly hair."  Smith would later tell the police that she believed that the vehicle in question was a Jeep Cherokee.

Frightened by her situation, Smith asked the man to drive her to an apartment complex where an acquaintance lived.  He agreed to do this, but as they neared the complex, he produced a pistol and put it against Smith's head.  The man demanded that Smith perform oral sex and threatened to kill her if she refused. Smith complied with this demand, but as she did so, she felt for the passenger door handle.  When she found the handle, she opened the door and jumped from the Jeep while it was still moving.

Smith found herself in an open field.  Her assailant stopped his vehicle and pursued Smith on foot.  He seized her, and they began to struggle.  As the man hit her, Smith raised her hand to ward off his blows.  Smith felt a cut on her hand and realized that the man had a knife.  The attacker held Smith by her hair and put the knife to her neck.  He threatened to slit her throat if she did not return to his vehicle.  Bleeding from the cut on her hand, Smith returned to the Jeep, where the man handcuffed her to the gear shift lever.

The assailant drove to a wooded location, stopped, and ordered Smith out of the vehicle.  He pushed her to the ground, removed her clothes, and penetrated her with his tongue and then with his penis.  As he sexually assaulted her, the man twice choked Smith until she lost consciousness.  When she returned to consciousness the

second time, he helped Smith get dressed and returned her to his vehicle, where she was again handcuffed to the gear shift lever.

As the man drove back into Austin, he told Smith that he was going to take her "to a safe place where [she] wasn't going to give him 30 years."  Smith testified that she believed that he intended to kill her, and she decided that her only hope was to convince him that she was his friend.  To this end, Smith told the man that there had been "no crime."  Hoping to lure him into a familiar neighborhood, Smith told the man that she knew of a vacant house (the house where she and her husband had been living) where they could stay until morning.  She suggested that they could have breakfast and "be together forever."

At some point, the man removed the handcuffs.  He also agreed to buy Smith some cigarettes, and he stopped at a convenience store at the corner of Ben White and South First.  To convince him that she would not flee, Smith took off her shirt and told him she "wouldn't run being half clothed."  When the man walked into the store, however, Smith left the Jeep and ran screaming to another vehicle that had just entered the parking lot.

The driver of this vehicle was Matthew Mock.  Mock testified that he had stopped to buy gas when a woman he identified as Smith, naked from the waist up, ran to his car, screaming, crying, and begging for help.  Mock said that Smith "looked like she had been put through the mill."  She was "just bloody" and "looked horrible."  He noticed specifically that she was bleeding from her hand.  Mock allowed Smith to enter his car, and she climbed into the passenger floorboard.  Smith "was just hunched up like she was trying to hide underneath [the] seat if she could have, like she would have absolutely crawled underneath there."  Smith told Mock that she had been raped.  She "was screaming that [the rapist] had a gun and a knife" and was inside the store.  Mock did not look for the man because "[t]he reaction that she had was more than sufficient to scare me enough to get . . . both of us out of there."  Mock, who had called 911 when he first saw Smith, drove across Ben White to a closed store, where he circled the parking lot "keeping an eye out for anybody else who might be coming after us" until help arrived.

Mock's 911 call was received at 3:30 a.m.  Within minutes, both emergency medical personnel and police arrived at the scene.  A paramedic described finding Smith "curled down in front of the seat of [Mock's] car almost in a fetal position, and she was holding her hands like this (indicating) and was crying and very, very–acting fearful."  Smith was taken to the hospital, where she received stitches in her hand and was examined by a sexual abuse nurse examiner.  Semen collected during this examination was later found to contain appellant's DNA.

6

On October 4, 2006, appellant was stopped and arrested while driving a Jeep Cherokee. The interior of appellant's Jeep was dirty and wires were hanging from the dashboard. Two knives and a set of handcuffs were found inside the Jeep, and there were scratch marks on the gear shift lever. Appellant's booking photograph was placed in a photo spread and identified by Smith, who also identified appellant at the trial. Smith's DNA was not found on the knives or the handcuffs, but her DNA was found in blood stains on the Jeep's passenger seat.

*Allen*, 2009 WL 2341830, at *1-2.

## III.   ALLEN'S CLAIMS FOR RELIEF

Allen contends that he is entitled to habeas relief based on the following grounds:

1.    His conviction was based on an involuntary stipulation in violation of the Due Process Clause.

2.    His trial attorney was ineffective during the guilt phase of trial:

    a.    in failing to object to testimony of Detective Jeffrey Greenwalt related to the gun used in the charged offenses; and

    b.    in failing to request a jury instruction regarding the destruction of the Jeep as potentially exculpatory evidence.

3.    His trial counsel's representation at the punishment phase was ineffective:

    a.    by presenting only a bare-bones closing argument and abandoning potentially meritorious arguments;

    b.    by failing to object to Detective Greenwalt's testimony that Allen's initial response to a search warrant was to invoke his right to speak with an attorney; and

    c.    in allowing Detective Greenwalt to repeat damaging testimony related to concealment of a pistol.

4.    Trial counsel failed to put the prosecution's case to adversarial testing when he allowed Allen to stipulate that the sex between Allen and the victim was non-consensual, qualifying Allen for a *Cronic* presumption of prejudice for his ineffective-assistance-of-counsel claim.

Pet. at 7-30.

7

IV.   **EXHAUSTION OF STATE REMEDIES, STATUTE OF LIMITATIONS, AND SUCCESSIVE PETITION**

The Director concedes that Allen's petition is timely and is not subject to the successive petition bar.  Answer at 15; *see also* 28 U.S.C. § 2244(b), (d).  The Director also admits that Allen has sufficiently exhausted his state court remedies for the claims presented.  Answer at 15; *see also* 28 U.S.C. § 2254(b).

**DISCUSSION**

I.   **REVIEW UNDER THE ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT OF 1996**

The Supreme Court has summarized the basic principles that have grown out of the Court's many cases interpreting the 1996 Antiterrorism and Effective Death Penalty Act.  *See Harrington v. Richter*, – U.S. –, 131 S. Ct. 770, 783-85 (2011).  The Court has noted that the starting point for any federal court in reviewing a state conviction is 28 U.S.C. § 2254, which states in part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The Court noted that "[b]y its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." *Harrington*, 131 S. Ct. at 784.

One of the issues *Harrington* resolved was "whether § 2254(d) applies when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Id.* Following all of the Courts of Appeals' decisions on this question, *Harrington* concluded that the deference due a state court decision under § 2554(d) "does not require that there be an opinion from the state court explaining the state court's reasoning." *Id.* (citations omitted). The Court noted that it had previously concluded that "a state court need not cite or even be aware of our cases under § 2254(d)." *Id.* (citing *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 365 (2002) (*per curiam*)). When there is no explanation with a state court decision, the habeas petitioner's burden is to show there was "no reasonable basis for the state court to deny relief." *Id.* And even when a state court fails to state which of the elements in a multi-part claim it found insufficient, deference is still due to that decision, because "§ 2254(d) applies when a 'claim,' not a component of one, has been adjudicated." *Id.*

As *Harrington* noted, § 2254(d) permits the granting of federal habeas relief in only three circumstances: (1) when the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of the Supreme Court; (2) when the earlier decision "involved an unreasonable application of" such law; or (3) when the decision "was based on an unreasonable determination of the facts" in light of the record before the state court. *Id.* at 785 (citing 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 412, 120 S. Ct. 1495, 1523 (2000)). The "contrary to" requirement "refers to the holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Dowthitt v. Johnson*, 230 F.3d 733, 740 (5th Cir. 2000) (quotation and citation omitted).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than . . . [the Supreme Court] has on a set of materially indistinguishable facts.

*Id.* at 740-41 (quotation and citation omitted). Under the "unreasonable application" clause of § 2254(d)(1), a federal court may grant the writ "if the state court identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 741 (quotation and citation omitted). The provisions of § 2254(d)(2), which allow the granting of federal habeas relief when the state court made an "unreasonable determination of the facts," are limited by the terms of the next section of the statute, § 2254(e). That section states that a federal court must presume state-court fact determinations to be correct, though a petitioner can rebut that presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). But absent such a showing, the federal court must give deference to the state court's fact findings. *Id.*

## II.   ALLEN'S CLAIMS

Having independently reviewed the state-court record and Allen's asserted claims, the Court finds nothing unreasonable or contrary in the state court's application of clearly established federal law or in its determination of facts in light of the evidence, as discussed below.

### A.   Stipulation

Allen argues that his agreement to the stipulation regarding the victim's consent was effectively a guilty plea to a lesser charge of sexual assault, triggering obligations by the trial court to inquire into the voluntariness of the stipulation before permitting its entry into evidence. Pet. at 9-12. He contends that the trial court should have administered the admonitions required under

*Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709 (1969), and required a showing on the record that the stipulation was made intelligently and voluntarily before accepting the stipulation.  *Id.*  The Director counters that *Boykin* requirements are limited to guilty pleas to charged offenses, and not applicable prior to entry into a stipulation on an element of an uncharged offense.  Answer at 18-19. The Director also cites Supreme Court precedent holding that a concession of guilt during trial is not the functional equivalent of a guilty plea, all of which precludes the required showing for habeas relief of an unreasonable or contrary application of clearly established Supreme Court precedent. *Id.*  Moreover, the Director argues, such a novel complaint is barred by *Teague v. Lane*, 489 U.S. 288, 109 S. Ct. 1060 (1989).  *Id.*

In *Boykin v. Alabama*, the Supreme Court held that before a trial court may accept a guilty plea to a charged offense, it should ensure that the defendant knowingly and voluntarily waives his right against self-incrimination, his right to trial by jury, and his right to confront witnesses against him.  395 U.S. at 243, 89 S. Ct. at 1712.  Allen offers no clearly established federal law in support of his argument that a stipulation on an element of a lesser, uncharged offense should be regarded as an effective guilty plea such that the stipulation must be examined for its voluntary and intelligent character and the defendant must be given *Boykin* admonitions before entering into any such stipulation.  Moreover, in *Florida v. Nixon*, the Supreme Court rejected the contention that a concession of guilt during trial is the "functional equivalent of a guilty plea," further precluding Allen's contention.  543 U.S. 175, 188, 125 S. Ct. 551, 561 (2004).  In addition, to the extent that Allen might be able to identify any support for his extension of *Boykin*, his argument would be foreclosed by the *Teague* bar.  *See Teague v. Lane*, 489 U.S. 288, 109 S. Ct. 1060 (1989).

Under the AEDPA, habeas relief is available only if Allen demonstrates that the state court's adjudication of his claim was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court precedent, or if Allen demonstrates that the state court's adjudication was the product of an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d). In light of the cited Supreme Court precedent, the Court should conclude that this claim should be denied.

### B. Ineffective Assistance at Guilt Stage

Allen argues that trial counsel was ineffective in failing to object to the testimony of Detective Jeffrey Greenwalt regarding the location of the pistol allegedly used by Allen, and by failing to request a jury instruction regarding the destruction of the Jeep as potentially exculpatory evidence. Pet. at 13-16.

Ineffective assistance of counsel claims are analyzed under the well-settled requirements set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984).

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant can make both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* at 687, 104 S. Ct. at 2064.

For the first requirement, the proper measure of attorney performance is "simply reasonableness under prevailing professional norms." *Id.* at 688, 104 S. Ct. at 2065. In deciding whether counsel's performance was deficient, the Court applies a standard of objective

reasonableness, keeping in mind that judicial scrutiny of counsel's performance must be highly deferential. *Id.* at 686-89, 104 S. Ct. at 2064-65. "[A] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689, 104 S. Ct. at 2065. Indeed, the Supreme Court has established that counsel should be "'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment,'" and cautioned against an "'intrusive post-trial inquiry into attorney performance'" and the "'tempt[ation] for a defendant to second-guess counsel's assistance after conviction or adverse sentence.'" *Cullen v. Pinholster*, – U.S. –, 131 S. Ct. 1388, 1403 (2011) (quoting *Strickland*, 466 U.S. at 688-90, 104 S. Ct. at 2065-66).

For the second requirement, the question is whether there is a reasonable probability that, absent the alleged error, the result of the proceeding would have been different, a question that must be considered in the context of the entire evidence. *Strickland*, 466 U.S. at 694-95, 104 S. Ct. at 2068-69. A reasonable probability is "'a probability sufficient to undermine confidence in the outcome,'" *Pinholster*, 131 S. Ct at 1403 (quoting *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068), which requires a "'substantial,' not just 'conceivable,' likelihood of a different result," *id.* (quoting *Harrington*, 131 S. Ct. at 791).

Accordingly, in order to prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show that: (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a substantial likelihood that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 1403; *Strickland*, 466 U.S. at 687, 104

13

S. Ct. at 2064.  Because a convicted defendant must satisfy both *Strickland* requirements to demonstrate ineffective assistance, a failure to establish either deficient performance or prejudice makes it unnecessary to consider the other requirement.  466 U.S. at 697, 104 S. Ct. at 2069; *Black v. Collins*, 962 F.2d 394, 401 (5th Cir. 1992).

In addition to the "highly deferential" view that the Court takes of counsel's performance under *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065, the Court is also limited in its examination of such claims by the "'deferential lens of § 2254(d).'"  *Pinholster*, 131 S. Ct. at 1404 (quoting *Knowles v. Mirzayance*, 556 U.S. –, – n.2, 129 S. Ct. 1411, 1419 n.2 (2009)).  In this way, the Court's review of the state habeas court's determination of ineffective assistance claims is "'doubly'" deferential.  *Harrington*, 131 S. Ct. at 788 (quoting *Knowles*, 129 S. Ct. at 1420).

As discussed below, Allen's ineffective-assistance claims fail to satisfy *Strickland* and the AEDPA's prerequisites.

### 1.    Objection to Detective's Testimony

Allen argues that his trial counsel should have objected when a detective testified that he concluded that he missed discovering the gun alleged to have been used in the crime when executing the search warrant at Allen's residence.  Pet. at 13-14 (citing 11 R.R. at 167).  The detective testified that after later listening to a tape of Allen's jailhouse calls to his brother, he concluded that the gun may have been in the back of a filing cabinet in Allen's bedroom.  11 R.R. at 167.  According to Allen, this testimony showed that Allen and his brother were conspiring to dispose of evidence, which should have been recognized as an extraneous offense and been the subject of an objection.  Pet. at 13-14.  The Director argues that the record does not make clear that Allen and his brother were conspiring to move the weapon, and as a result, no extraneous offense was presented that

14

should have triggered an objection.  Answer at 21-22.  The Director also asserts that such testimony, as characterized by Allen, would have been admissible as an admission by a party opponent and not the basis for a valid objection.  *Id.* at 22.

Review of the testimony at issue makes clear that the detective's testimony did not state or speculate that Allen conspired with his brother to move a gun.  *See* 11 R.R. at 167.  Nor could the testimony serve as the basis for such an inference.  In response to the question, "based upon what you heard on those calls, did you come to the conclusion that you missed the gun?" Detective Greenwalt replied "yes."  *Id.* at 167.  The testimony lacked an accusation that Allen's brother had, in fact, moved a weapon or that Allen asked his brother to move a weapon.  *See id.*  Detective Greenwalt merely stated that he missed searching between the drawers of the filing cabinet and the back of the filing cabinet and that based on listening to the phone calls, he concluded that was where the gun may have been located.  Additionally, when the same testimony arose during the punishment phase, the trial court stated, "I don't think that the testimony is objectionable anyway because it is still an admission by a party opponent." 13 R.R. at 162.  Admissible testimony cannot be the basis for attributing deficient performance to trial counsel because no basis for an objection existed.  *See, e.g., Turner v. Quarterman*, 481 F.3d 292, 298 (5th Cir. 2007) ("counsel cannot have rendered ineffective assistance of counsel by failing to make an objection that would have been meritless"). Allen fails to show deficient performance.

Allen also fails to show that but for his trial counsel's failure to raise the urged objection, there was a reasonable probability that the result of the guilt phase would have been different.  In light of the entire evidence supporting the convictions for the aggravated sexual assault, including that based on the gun, there was not a reasonable possibility that even without the testimony at issue,

15

the result of the trial would have differed.  As the Third Court of Appeals noted, albeit in the context

of another issue, the evidence at trial included the testimony of the victim, the victim's rescuer, the

police officers who responded to the 911 call, the emergency medical personnel, and the nurse

examiner, as well as the physical evidence found in Allen's Jeep, that is, the handcuffs, knives, the

victim's bloodstains, and scratches on the gearshift.  *Allen*, 2009 WL 2009 2341830, at *9.  Any

possible suggestion about the extraneous act of hiding a weapon would have had little significance

in the context of such compelling evidence.  Moreover, as discussed, Allen fails to show the basis

for a valid objection, and the absence of a meritless objection cannot demonstrate prejudice.  *See,*

*e.g., United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a

meritless argument thus cannot form the basis of a successful ineffective assistance of counsel claim

because the result of the proceeding would not have been different had the attorney raised the

issue.").  Allen fails to show prejudice as required for an ineffective assistance claim.

Allen does not demonstrate that the state court's rejection of his claim of ineffective

assistance of counsel at the guilt stage was an unreasonable or contrary application of the clearly

established federal law, and his claim should be denied.  *See* 28 U.S.C. § 2254(d).

### 2.      Adverse Inference Instruction

In his next claim, Allen asserts that because the State destroyed Allen's Jeep before he

photographed the inside of the vehicle, his trial counsel should have sought a jury instruction

informing the jury that it could infer that the missing evidence would have been favorable to Allen's

defense. Pet. at 16.  Allen argues that the Jeep evidence was potentially exculpatory because he was

alleged to have used a knife in the course of his sexual assault of the complainant, 1 C.R. at 31

(count seven), but the complainant at one point told a counselor at the hospital that she cut her hand

getting out of Allen's Jeep, Pet. at 15 (citing 13 R.R. at 125-26).  The Director contends that Allen's attorney was not ineffective because the circumstances did not qualify for an adverse inference jury instruction.  Answer at 23.  In addition, the Director asserts that sufficient photographic evidence was available to Allen to make his argument, precluding a showing of prejudice.  *Id.*[5]

Allen fails to show the necessary deficient performance on the part of his trial counsel.  In order to obtain an adverse inference jury instruction based on the destruction of potentially useful evidence (as opposed to material, exculpatory evidence), the defendant must show that the prosecution acted in bad faith when it lost or destroyed the evidence.  *Ex parte Napper*, 322 S.W.3d 202, 23-32 (Tex. Crim. App. 2010); *Roberts v. State*, No. 11-09-00175-CR, 2011 WL 2112809, at *4 (Tex. App.–Eastland May 27, 2011); *Martin v. State*, No. 03-10-00420-CR, 2011 WL 3518050 (Tex. App.–Austin Aug. 10, 2011).  Allen would not have been entitled to such an instruction, even had his trial counsel requested it, because there was no evidence, or suggestion, of bad faith on the part of the prosecution.  *See Napper*, 322 S.W.3d at 238 (explaining that bad faith is "more than simply being aware that one's action or inaction could result in the loss of something that is recognized to be evidence" and "entails some sort of improper motive, such as personal animus against the defendant or a desire to prevent the defendant from obtaining evidence that might be useful").  In the absence of any evidence or suggestion of bad faith, the trial court would have denied a request for the now-urged jury instruction had it been made.  A failure to request an unwarranted jury instruction does not demonstrate that counsel's representation fell below an objective standard

---

[5]  The Director does not dispute the appropriateness of a remedial instruction for such an asserted error, and the undersigned assumes without deciding for purposes of this report and recommendation that such a remedy would be appropriate.

of reasonableness.  *See, e.g., Paredes v. Quarterman*, 574 F.3d 281, 291 (5th Cir. 2009) (holding

failure to raise a meritless objection does not satisfy the deficient performance prong of *Strickland*).

Allen additionally fails to show the required prejudice for a *Strickland* claim.  The record

demonstrates that the inside of Allen's Jeep was well-documented by photographs of both the inside

and outside of the Jeep.  *See* SXs 24-29, 73-84, 86-87, 89-91, 93-106.  The lack of even additional

photographic evidence did not prevent Allen's trial counsel from arguing that the victim cut her hand

inside the Jeep rather than by Allen with a knife.  In fact, the victim's comments to the counselor at

the hospital provided a basis for that argument.  Because sufficient photographs of the Jeep were

available and because the victim's comments to the counselor at the hospital were also available,

Allen does not show the necessary prejudice from any possible error in not requesting the jury

instruction.

Allen fails to show that the state court's adjudication of this *Strickland* claim was an

unreasonable or contrary application of federal law, and this claim for relief should be denied as

well.  *See* 28 U.S.C. § 2254(d).

## C.     Ineffective Assistance at Punishment Stage

Allen argues that his trial counsel was also ineffective during the punishment phase of his

trial in three ways: (1) abandoning a potentially meritorious argument in closing; (2) not objecting

to Detective Greenwalt's testimony that Allen's initial response to a search warrant was to invoke

his constitutional right to speak with an attorney; and (3) not objecting to Detective Greenwalt's

repetition of purportedly damaging testimony regarding a pistol and a black case. Pet. at 17-22.  The

Director counters:  (1) review of trial counsel's argument in its entirety shows that counsel did not

abandon the defensive strategy at issue; (2) Allen had already been found guilty, which makes it

difficult to show deficient performance based on a failure to object to a reference to Allen's invocation of a constitutional right, and Allen fails to show how the testimony resulted in a significantly harsher sentence; and (3) Allen fails to point to anything deficient about trial counsel's examination of Detective Greenwalt, but instead merely reviews his attempted clarification of the detective's testimony during the guilt phase and the fact that Allen never mentioned the word "pistol" during the taped conversations that the detective heard.  Answer at 26-30.

The first *Strickland* requirement of deficient performance applies to claims involving ineffective assistance of counsel during the punishment phase of a non-capital case.  *See, e.g., Miller v. Dretke*, 420 F.3d 356, 364-65 (5th Cir. 2005).  In the state sentencing context, *Strickland*'s second requirement of prejudice involves an inquiry whether, absent counsel's errors, there exists a reasonable probability that the defendant's sentence would have been "significantly less harsh."  *Id.* at 365 n.37.  Relevant factors include the defendant's actual sentence, the possible minimum and maximum sentences that could have been imposed, the relative placement of the actual sentence within the range of potential sentences, and any relevant mitigating or aggravating circumstances.  *Id.* at 365.

### 1.    Abandoning Argument in Closing

Allen asserts that the prosecution's most important witness during the punishment phase was Misty Mugica, who testified that Allen abducted her at gunpoint about a week after the events at issue in Allen's trial.  Pet. at 17.  According to Allen, his trial counsel established during cross-examination of Mugica in front of the jury that the initial investigating officer found Mugica unbelievable and uncooperative.  *Id.* (citing 13 R.R. at 168-80; 14 R.R. at 87-88).  After laying this groundwork for impeaching Mugica's testimony, according to Allen, and after also adducing

evidence that Allen was a good father, good citizen, and not an "unredeemable sexual predator," Allen asserts that his trial counsel abandoned these strategies, failed to attack Mugica's credibility, and instead argued that Allen was guilty.  *Id.* at 17-20.  The Director asserts that the trial attorney's closing argument was reasonable and the best possible argument in light of other evidence and the fact that defense counsel was unable to undermine Mugica's credibility.  Answer at 25-27.

In examining a closing argument in the context of an ineffective-assistance claim, such statements are considered in their entirety.  *See Carter v. Johnson*, 131 F.3d 452, 466 (5th Cir. 1997). "Furthermore, counsel may make strategic decisions to acknowledge the defendant's culpability," and may argue in favor of a sentence "in order to establish credibility with the jury."  *Id.*  Review of trial counsel's argument in its entirety and Mugica and the police officer's entire testimony, rather than only the pieces selected by Allen, makes apparent that Allen's attorney did not abandon his argument, but reasonably modified his strategy based on the relevant testimony and the evidence that Allen sexually assaulted a third woman.

Mugica acknowledged that the initial investigating officer did not believe her, 13 R.R. at 185-86, but that same officer then testified that he "g[o]t it wrong in this case," 14 R.R. at 89. Mugica also explained that she never told police that she would have trouble identifying her assailant, and that instead, she "described him perfectly." 13 R.R. at 189.  She also identified Allen in court, and the prosecution presented her photo lineup identification.  *Id.* at 183-84.  Further, she recounted an attack similar to the complainant's attack, *id.* at 175-80, and gave a description of Allen's Jeep, *id.* at 180.  Although trial counsel did attempt to create doubt as to Mugica's credibility, her testimony instead established her credibility.  Additionally, Allen's attorney faced the evidence that Allen had sexually assaulted yet a third woman in 1996. 14 R.R. at 22-58.  Given this

testimony and evidence, counsel followed a reasonable strategy of urging the jury not to punish Allen for the attack on Mugica because she would have her own day in court, emphasizing that there were people who believed in Allen and supported him, and suggesting a "thirty-year" sentence as an appropriate sentence. *Id.* at 165-66. Allen's counsel's closing statement fell within "the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066.

Allen's complaint is not supported by the record. He fails to show either the required deficient performance by his counsel or any resulting prejudice, and certainly not that that the state habeas court unreasonably applied the law of *Strickland* or applied it in a way contrary to *Strickland* precedent. *See* 28 U.S.C. § 2254(d). The Court should deny this claim.

### 2.     Failure to Object to Testimony That Allen Invoked His Right to Counsel

Allen argues that his trial attorney should have objected when Detective Greenwalt testified that when he approached Allen with a search warrant for a swab from his mouth, his first response was that "he wanted to speak to his lawyer and he had nothing to say to me." Pet. at 21 (quoting 14 R.R. at 102). The Director agrees that a defendant's post-arrest silence cannot be used as evidence, but asserts that because the testimony at issue was given during the punishment phase, it is "difficult" to use it as the basis of deficient performance. Answer at 28. The Director also emphasizes that Allen fails to show how the alleged error led to a significantly higher sentence. *Id.*

Even assuming that Allen's counsel should have objected to the detective's testimony, Allen fails to suggest that the prosecution pursued this point, or highlighted or relied on this testimony. Allen simply fails to show how this testimony resulted in a significantly harsher sentence, the second requirement under *Strickland*.

Because Allen fails to show that the state court's rejection of this *Strickland* claim was contrary to, or involved an unreasonable application of, Supreme Court precedent or that its determination was the product of an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d), this claim should be denied.

### 3.     Detective Greenwalt's Testimony Related to a Gun

Allen contends that his trial attorney's examination of Detective Greenwalt during the punishment phase was ineffective by following up with the detective about his testimony during the guilt phase of the trial regarding the jailhouse phone recordings in which Allen spoke with his brother and Detective Greenwalt inferred that they were discussing the pistol he did not find when searching Allen's home. Pet. at 21-22. According to Allen, this testimony reinforced Detective Greenwalt's earlier testimony that purportedly suggested that Allen conspired with his brother to hide a gun. *Id.* at 22. The Director asserts that attempting to clarify the detective's earlier testimony on this point cannot be labeled objectively unreasonable, and the fact that Allen's attorney elicited a concession from Detective Greenwalt that Allen never said "pistol" or "firearm" in the taped conversations would have only been to Allen's benefit, to the extent that the jury even considered this testimony. Answer at 28-30.

During the punishment stage, Allen's trial attorney elicited an acknowledgment from Detective Greenwalt that Allen never said the word "pistol" or "firearm" on the tape recordings. 14 R.R. at 97. Allen apparently had been instead referring to a "black case" that contained videotapes, and Detective Greenwalt conceded that Allen's reference to a black case referred to the videotapes and not to a pistol. *Id.* at 97-98.

Allen fails to point to anything objectionable about his trial counsel's handling of this testimony.  Attempting to clarify the detective's prior testimony does not demonstrate  deficient performance in this context.  In any event, the testimony regarding the possible concealment of the pistol was likely not important to the jury's determination of Allen's sentence.  The jury had found Allen guilty of a violent crime, and heard evidence indicating that Allen had also sexually assaulted other women.  Allen fails to show a reasonable probability that his sentence would have been "significantly less harsh" in the absence of testimony regarding Allen's possible concealment, or lack of concealment, of a pistol in his home.

Without a showing of either deficient performance or prejudice, Allen fails to show that the state court's rejection of this *Strickland* claim was contrary to, or involved an unreasonable application of, Supreme Court precedent or that its determination was the product of an unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d).

**D.    Advice to Stipulate and *Cronic* Presumption of Prejudice**

Allen contends that his trial attorney's performance in the guilt phase in counseling Allen to enter into a stipulation of nonconsent by the victim constituted ineffective assistance because the circumstances qualify for the presumption of prejudice under *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039 (1984).  Pet. at 23-30.  Allen asserts that his trial counsel assumed that if Allen stipulated to the victim's lack of consent to the sexual acts, the testimony by Muniga would be excluded and the trial court would instruct the jury to consider the lesser included offense of sexual assault, which would carry a lesser sentence.  In fact, Allen asserts that his counsel told him that he would face only 2-20 years of confinement if he agreed to the stipulation, reflecting an apparent assumption by counsel not only that the trial court would instruct on the lesser-included offense, but

also that the jury would convict on only the lesser included offense.  *See id.* at 23.  Allen argues that

he is deserving of the *Cronic* presumption of prejudice because defense counsel has a duty to consult

with his client prior to consenting to a guilty plea and the consultation must involve informed

consent to the concession of guilt.  Pet. at 24.  He argues that in this case, trial counsel counseled

Allen to essentially concede guilt to an uncharged offense, making this case appropriate to conclude

that Allen's counsel was not functioning as the prosecution's adversary, thus triggering the *Cronic*

presumption of prejudice.   In making this argument, Allen relies on the Supreme Court's

acknowledgment in *Florida v. Nixon*, 543 U.S. 175, 190, 126 S. Ct. 551, 562 (2004), that a

concession of guilt in a "run-of-the-mine trial might present a closer question" when it rejected the

theory that a concession of guilt at the guilt stage of trial equated with the entry of a guilty plea.

Allen also argues that *Cronic* applies on the theory that urging of the stipulation amounted to an

abdication from representation at the latter stage of trial because the change in strategy required

counsel to abandon the defense's consent theory and negatively affected the defense's credibility.

Pet. at 23-30.

   The Director contends that Allen does not show that his case qualifies for any of the three

limited circumstances eligible for the *Cronic* presumption, and that Allen's attorney did not fail to

subject the prosecution's case to meaningful adversarial testing.  The Director further contends that

Allen fails to show, as required by the AEDPA, that the Court of Criminal Appeals unreasonably

applied the law of *Cronic* or applied it in a way contrary to Supreme Court precedent.  The Director

also takes issue with Allen's factual version of his counsel's representations to Allen about the

stipulation, the possible benefits of the stipulation, whether his counsel truly assumed that the trial

court would necessarily instruct on a lesser charge if the stipulation was accepted, whether Allen was

actually induced to enter the stipulation by an understanding that it would result in a sentence of 2-20 years, and whether any confusion on the part of Allen concerned the stacking of sentences for multiple counts and not the range of punishment.  Answer at 36-37.

In *Cronic*, the Supreme Court considered which "circumstances . . . are so likely to prejudice the accused that" a habeas petitioner need not prove actual prejudice when advancing an ineffective-assistance-of-counsel claim.  466 U.S. at 658, 104 S. Ct. at 2046.  The Court recognized an exception to the rule that a petitioner asserting an ineffective-assistance-of-counsel claim must prove actual prejudice in addition to deficient performance, and established that prejudice must be presumed in three circumstances:  (1) if the petitioner "is denied counsel at a critical stage of his trial," (2) if "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing," and (3) circumstances in which counsel is available to assist but "the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate."  *Id.* at 659-60, 104 S. Ct. at 2047; *see also Wright v. Van Patten*, 552 U.S. 120, 124-25, 128 S. Ct. 743, 746 (2008) (restating same).

Allen does not qualify for the *Cronic* presumption of prejudice.  A review of the record in this case demonstrates that Allen's attorney's representation was "meaningful."  The record includes motions contesting the search, the identification, the use of statements, various objections at trial, and presentations of argument to the trial court; in short, it shows that trial counsel vigorously defended Allen and actively engaged with the prosecution.  *See, e.g.,* 2 C.R. at 364-88; 13 R.R. at 49-57.

Moreover, Allen cannot rely on *Nixon* to advance the proposition that counsel's purported mistake in telling Allen that the stipulation would ensure an instruction on the lesser-included

25

offense of sexual assault amounts to *Cronic* error.  *See* Pet. at 26-30.  In *Nixon*, a capital case, trial

counsel decided to confess Nixon's guilt in the face of overwhelming evidence of Nixon's guilt and

a confession, and explained to the jury that he hoped to convince the jury in the penalty phase to

spare Nixon's life.  543 U.S. at 182-84, 125 S. Ct. at 557-58.  The Supreme Court reversed the

Florida Supreme Court's determination that trial counsel's failure to secure Nixon's express consent

on this trial strategy amounted to a *Cronic* violation, and held that a concession of guilt was not a

guilty plea (which would require the attorney's consultation and the defendant's consent). *Id.* at 187,

125 S. Ct. at 560.  The Court emphasized that despite the concession, Nixon "retained the rights

accorded a defendant in a criminal trial."  *Id.* at 188 , 125 S. Ct. at 561.  The Court held that the

equation of the concession strategy to a guilty plea was an "erroneous equation" and *Cronic* did not

extend to the situation.  *Id.* at 189-90, 125 S. Ct. at 561-62.

As in *Nixon*, Allen's trial counsel made a reasoned strategic decision to concede an issue by

stipulation that Allen certainly would have lost if Mugica would have testified.  Mugica would have

been the last witness at trial and would have left the jury with testimony that Allen had attempted

the same act a week after attacking the complainant in this case, which would have been undeniably

damaging to Allen's defense of consent.  The concession eliminated Mugica's testimony and left the

defense able to argue that the prosecution had failed to satisfy its burden to show that the evidence

supported aggravating circumstances, an element of the charged offenses.  This strategy was an

objectively reasonable strategy, and did not represent a failure to put the prosecution's case to

meaningful adversarial testing or an abandonment that amounted to a denial of counsel.[6]

---

[6]  In *Nixon*, the Supreme Court did leave the door open to the possibility that a concession
of guilt in a "run-of-the-mine trial," as opposed to a two-phase, capital trial in which trial counsel
chose to focus defense efforts on the penalty phase, "might present a closer question."  543 U.S. at
190, 125 S. Ct. at 562.  The Supreme Court, however, has not altered the requirements for a *Cronic*

Because Allen does not demonstrate that the state habeas court's adjudication of this claim was an unreasonable or contrary application of the law of *Strickland* and *Cronic*, as established by the U.S. Supreme Court, or that the determination was the product of an unreasonable determination of the facts, *see* 28 U.S.C. § 2254(d), the Court should deny relief on this claim as well.

### RECOMMENDATION

It is recommended that Allen's application for writ of habeas corpus be denied.

### CERTIFICATE OF APPEALABILTY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "[u]nless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, effective December 1, 2009, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1604 (2000). In cases in which a district court rejects a petitioner's constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least,

---

presumption and both the AEDPA and the *Teague* doctrine function to limit the scope of habeas relief to established Supreme Court precedent. In any event, Allen stipulated to an element on an uncharged offense and did not concede guilt at trial to a charge offense.

that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the dismissal or denial of Allen's Section 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *See Miller-El v. Cockrell*, 537 U.S. 322, 327, 123 S. Ct. 1029, 1034 (2003) (citing *Slack*, 529 U.S. at 484, 120 S. Ct. at 1604). Accordingly, it is respectfully recommended that the Court not issue a certificate of appealability.

<h3 style="text-align:center">OBJECTIONS</h3>

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The district court need not consider frivolous, conclusive, or general objections. *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall also bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).

To the extent that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is

ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return

receipt requested.

SIGNED this 28th day of March, 2012.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE